UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| EPIC TECH, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:19-CV-2400 |
| | § | |
| FUSION SKILL, INC., *et al*, | § | |
| | § | |
| Defendants. | § | |

# MEMORANDUM AND ORDER

Before the Court are Defendants' Motion for Partial Summary Judgment on No Trademark Infringement and No Trade Dress Infringement (Doc. 180), Defendants' Motion for Partial Summary Judgment of No Contributory or Vicarious Liability (Doc. 181), Plaintiff's Motion for Partial Summary Judgment Regarding Copyright and Trademark Claims (Doc. 183), and Defendants' Motion for Partial Summary Judgment of No Statutory Damage Under the Lanham Act (Doc. 188).

## I.  BACKGROUND

This is a patent, trademark, and copyright infringement case. Plaintiff Epic Tech, LLC, makes "electronic sweepstakes games," i.e., games akin to electronic slot machines but modified to comply with regulatory provisions, which it seeks to protect here. The Court has ruled in favor of Defendants on the patent issues. (Doc. 241.) It now considers the copyright, trademark, and trade dress issues.

This case involves allegations that Defendants, most notably Texas Wiz, LLC, distributed gaming hardware and software that violated Epic Tech's copyrights and trademarks. Specifically, Epic Tech asserts copyrights related to its "Lucky Duck" game, including game icons and screens,

1

cherries, watermelons, the "double bonus icon," the "duck bonus icon," and the "lucky seven icon." (Doc. 183 at 1.) Epic Tech holds trademarks on its "Four Leaf Cash," "Go Bananas," "Lucky Duck," "Hotter Than," "Fishing Mob," and "Bustin' Vegas" games. (Doc. 183 at 18–20.)

Epic Tech alleges that a software program called 8fuse contains games that infringe upon all of these copyrights and trademarks. Epic Tech further alleges that Defendants distributed the 8fuse software to numerous customers, most relevantly to an establishment called Theo's Billiards in Corpus Christi, Texas, and a man named Monir Kutob. Defendants dispute this characterization of their behavior. The specific evidence related to this dispute is discussed in the Court's analysis of the copyright and trademark issues, to which it now turns.

## II. ANALYSIS

Four motions for summary judgment remain for the Court's decision. The Court will first discuss copyright infringement, then trademark infringement, then trade dress infringement, and finally the miscellaneous smaller issues remaining for decision.

### A. Copyright

Epic Tech moves for summary judgment on the issue of copyright infringement. (Doc. 183.) Epic Tech asserts violations of the copyrights used in connection with its "Lucky Duck" game, including images of the "Lucky Duck" game icons and screens, cherries, watermelons, the "double bonus icon," the "duck bonus icon," and the "lucky seven icon." (Doc. 183 at 1.) Defendants "have resolved not to pursue any affirmative defense" but contend that Epic Tech cannot establish infringement. (Doc. 218 at 13.)

"To establish copyright infringement, a plaintiff must prove ownership of a valid copyright and copying of constituent elements of the work that are copyrightable." *Eng'g Dynamics, Inc. v. Structural Software, Inc.*, 26 F.3d 1335, 1340 (5th Cir. 1994). Here, Defendants concede

ownership and contest only the second element—"copying of constituent elements of the work," i.e., actionable copying. Actionable copying requires proof that (a) "the alleged infringer actually used the copyrighted material to create his own work," i.e. engaged in "factual copying," and (b) "there is substantial similarity between the two works." *Id.* at 1341.

Defendants contend that Epic Tech cannot establish factual copying or a substantial similarity between the two works. The two points boil down into one, because factual copying may be established where "the two works are so strikingly similar as to preclude the possibility of independent creation." *Gen. Universal Sys. v. Lee*, 379 F.3d 131, 141 (5th Cir. 2004).

Here, there is no serious dispute that the alleged 8fuse software is "so strikingly similar as to preclude the possibility of independent creation." The Court reproduces below the side-by-side comparisons offered by Epic Tech:

| **Plaintiff's Legacy Software** | **8fuse Software** |
|---|---|
| ![Bonus duck logo] Reg. No. VAi746300 | ![Bonus duck logo] |
| ![Double burst logo] Reg. No. VAi745457 | ![Double burst logo] |

| | |
|---|---|
|  Reg. No. VA000i779200 |  |

(Doc. 183 at 14.)

Rather than argue that these marks are not substantially similar, Defendants contend that Epic Tech has failed to prove (a) that the infringing marks are associated with the 8fuse software and (b) that, if they were, Defendants distributed the 8fuse software. The Court disagrees.

Epic Tech has submitted evidence appropriate for consideration on summary judgment that establishes the 8fuse software's copying of Epic Tech's marks and Defendants' distribution of the 8fuse software. Critically, Epic Tech has shown both that Defendants advertise the 8fuse software for distribution and that Theo's is among Defendants' customers. (Doc. 183-2 at 130955; Doc. 79-1 ¶ 16.) Further, Epic Tech adduced photographs of the games offered at Theo's. One such photograph is reproduced here:



(Doc. 183-11 at 1.) Clearly visible in this image are direct reproductions of the "duck bonus" icon, the "lucky seven" icon, the "double bonus" icon, the cherries icon, and the watermelons icon.

This evidence suffices to resolve the copyright issue in Epic Tech's favor. It shows that (a) Defendants distribute 8fuse products to their customers; (b) Theo's Billiards is among Defendants' customers; and (c) games offered at Theo's, presumably on the 8fuse system, infringe upon Epic Tech's copyrights. Therefore, Epic Tech has successfully proven—and Defendants have not disputed with evidence of their own—that Defendants violated Epic Tech's exclusive right to "distribute" the copyrights under 17 U.S.C. § 106(3). Based on this evidence, the Court grants summary judgment to Epic Tech on its copyright infringement claims.

### B. Trademark Infringement

Both parties move for summary judgment on the issue of trademark infringement. (Docs. 180, 183.) To establish a claim for trademark infringement, a plaintiff must show ownership of a legally protectable mark and a likelihood of confusion created by an infringing mark. *All. for Good Gov't v. Coal. for Better Gov't*, 901 F.3d 498, 505 (5th Cir. 2018).

As a threshold issue, the Court notes that Epic Tech failed to answer Defendants' argument that Epic Tech introduced no evidence of infringement for two of its asserted marks, "Go Bananas" and "Four Leaf Cash." (*See* Doc. 180 at 13.) At the motion hearing, Epic Tech strenuously insisted that these marks should nonetheless be considered. But Defendants clearly raised this issue in their briefing, complete with a separate subheading, and Epic Tech simply ignored it in both its own motion for summary judgment on this issue and its response to Defendants' motion. In a case involving this many issues and this much evidence, it is the responsibility of the parties, not of the Court, to ensure that each matter is properly briefed and presented to the Court. The Court will therefore deem the matter waived by Epic Tech and will not consider claims related to the "Go

Bananas" and "Four Leaf Cash" trademarks.

Nonetheless, because Epic Tech has established both elements of a trademark-infringement claim, the Court holds that Epic Tech's motion is otherwise meritorious and that Defendants' motion correspondingly fails. Defendants "do not dispute that Epic Tech owns legally protectable marks," so the only question is whether Epic Tech has established a likelihood of confusion. (Doc. 218 at 19.) "[L]ikelihood of confusion is typically a question of fact," but summary judgment is proper where the record is compelling. *Xtreme Lashes*, 576 F.3d at 227. To determine likelihood of confusion, courts look to eight "nonexhaustive digits of confusion . . . : (1) the type of trademark; (2) mark similarity; (3) product similarity; (4) outlet and purchaser identity; (5) advertising media identity; (6) defendant's intent; (7) actual confusion; and (8) care exercised by potential purchasers." *Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 227 (5th Cir. 2009). The weight of these digits varies "depending on the particular facts and circumstances involved." *Id.* (citation omitted).

To begin with, the Court finds that four of the eight digits of confusion—the fourth, fifth, sixth, and eighth—are indisputably neutral here. Neither party points to competent evidence on the fourth, fifth, and eighth digits of confusion—outlet and purchaser identity, advertising media identity, and care exercised by potential purchasers. And while Epic Tech argues that the sixth digit of confusion—the defendant's intent—can be inferred to favor Epic Tech based on the similarity of the marks, Epic Tech does not cite and the Court cannot find any caselaw providing that intent is inferable in this context.

Both parties argue that the first digit of confusion—the strength of the mark—favors their side, but the evidence is uninstructive. On the one hand, Epic Tech's marks—"Fishing Mob," "Lucky Duck," "Bustin' Vegas," and "Hotter Than"—are not, as Defendants argue, "generic":

6

they are not referential to sweepstakes video games as a general concept, and there is no evidence that other sweepstakes games use similar marks. *See Xtreme Lashes*, 576 F.3d at 227–28 (suggesting that a "generic" mark in the fake-eyelashes market would be "eyelash extensions"). But, on the other hand, Epic Tech's marks are not clearly distinctive: Epic Tech provides little evidence of the mark's "commercial strength," which is the "more important" factor in determining overall strength of the mark. *Bd. of Regents of the Univ. of Hous. Sys. v. Hous. Coll. of Law, Inc.*, 214 F. Supp. 3d 573, 585 (S.D. Tex. 2016). So this digit of confusion is ultimately neutral.

But two of the remaining digits of confusion weigh strongly in Epic Tech's favor. Most prominently, the second digit—similarity of the marks—weighs extremely strongly in Epic Tech's favor. Defendants' infringing marks are quite similar to Epic Tech's marks. In fact, in the case of Epic Tech's "Bustin' Vegas" and "Hotter Than" marks, the two sets of marks are identical. For Epic Tech's other two marks, the allegedly infringing marks are still extremely similar—they substitute "Fishing Rod" for "Fishing Mob" and "Lucky D." for "Lucky Duck." This digit of confusion therefore weighs quite heavily in Epic Tech's favor. Meanwhile, the third digit of confusion—product similarity—also weighs in Epic Tech's favor; both Epic Tech and Defendants used the marks in connection with sweepstakes games.

Finally, the seventh digit of confusion—actual confusion—also weighs in Epic Tech's favor. Only Epic Tech has submitted evidence relevant to this digit of confusion, in the form of Dr. Isabella Cunningham's consumer survey. Defendants attack the survey on several grounds, which the Court set forth on the record when it orally denied Defendants' Motion to Exclude Dr. Cunningham. Defendants' only compelling objection is that survey respondents in the control group reported confusion between the infringing marks and relatively dissimilar control marks at

a rate of 50%, suggesting that the survey more broadly overstated confusion between Epic Tech's marks and the allegedly infringing marks. Nonetheless, even if the Court assumes that the survey reported confusion at higher levels than justified, its topline results—that all three tested infringing marks produce a substantial likelihood of confusion—are still entitled to substantial weight given Dr. Cunningham's expertise, the 900-consumer sample size, the robustness of the data, and the absence of contrary evidence from Defendants. (See Doc. 183-8 at 9 (noting that a "net confusion of 28.5% is a clear indication of the likelihood of confusion" in comparison to other consumer surveys)).

Based on these three digits of confusion—similarity of the marks, product similarity, and actual confusion—Epic Tech is entitled to summary judgment. Indeed, Defendants do not credibly argue that any digit of confusion affirmatively weighs in their favor. Instead, they dedicate themselves to attacking the strength of Epic Tech's evidence on certain digits. But a plaintiff is not required to establish all eight digits of confusion, and the similarity of the marks alone, coupled with the absence of any evidence in Defendants' favor on any of the eight digits of confusion, is dispositive. Therefore, the Court grants summary judgment to Epic Tech on its trademark infringement claims, except as to the "Go Bananas" and "Four Leaf Cash" marks, on which the Court grants summary judgment to Defendants.

### C. Trade Dress Infringement

Defendants move for summary judgment on the issue of trade dress infringement. "Trade dress refers to the total image and overall appearance of a product and may include features such as the size, shape, color, color combinations, textures, graphics, and even sales techniques that characterize a particular product." *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 251 (5th Cir. 2010) (citation omitted). To establish a trade dress infringement claim, a plaintiff must

show that its trade dress is non-functional and distinctive, and that the allegedly infringing trade dress creates a likelihood of confusion. *Pebble Beach Co. v. Tour 18 I Ltd.*, 155 F.3d 526, 536–37 (5th Cir. 1998).

Epic Tech alleges that its game-screen trade dress was infringed upon by the 8fuse games. Its Complaint adduces the below comparison of the Epic Tech trade dress and the alleged 8fuse trade dress:

Epic Tech Trade Dress                                      Defendants' Trade Dress

 

(Doc. 79 at 24.)

Defendants attack Epic Tech's trade dress infringement claim on all three grounds, arguing that Epic Tech cannot show non-functionality, distinctiveness, or a likelihood of confusion. (Doc. 180 at 14, 17.) The Court agrees on the first point. Although Defendants present no evidence of their own to disprove any of the elements of a trade dress infringement claim, Epic Tech points to no competent evidence to establish non-functionality despite bearing the burden of establishing the elements of its claim.

Indeed, Epic Tech makes no affirmative argument that its trade dress is non-functional. The non-functionality inquiry turns on "whether characterizing a feature or configuration as protected will hinder competition or impinge upon the rights of others to compete effectively in the sale of goods." *Pebble Beach*, 155 F.3d at 537–38 (citations omitted). Among the factors considered in making this determination are "whether the feature or combination of features is

9

superior or optimal in terms of engineering, economy of manufacture, accommodation of utilitarian function or performance" and "whether its design as a whole is superior to other designs." *Id.* at 538 (citation and alteration omitted). Epic Tech does not even describe which features of its trade dress are non-functional, much less point to evidence that they are superior to other trade dresses extant in the sweepstakes game industry. The entirety of Epic Tech's briefing on non-functionality is as follows:

> [T]here is no question that the non-functional 'look and feel' of the Epic Tech Trade Dress . . . . have been copied and distributed by Defendants. But there was no need for Defendants to distribute games that copied the Epic Tech Trade Dress. Electronic sweepstakes games can be created based on an infinite number of themes using an infinite number of icons, graphics, images, and screens.

(Doc. 219 at 15.) This argument is wholly unresponsive to the question of whether the Epic Tech trade dress is non-functional in the first instance. It is not the Court's responsibility to imagine how a jury might conclude the Epic Tech trade dress is non-functional. At the motion hearing, Epic Tech appeared to argue that its trade dresses were inherently non-functional because they selected motifs that had no practical relevance to the game. But the Court does not find any competent evidence in the record to establish this point. So it will grant summary judgment to Defendants on the trade dress infringement claims based on Epic Tech's failure to prove non-functionality.

### D. Contributory and Vicarious Liability

Defendants also move for summary judgment on the issue of whether they have contributory and vicarious liability for third parties' violations of Epic Tech's trademarks and copyrights. (Doc. 181.) This motion fails except as to vicarious trademark infringement. The Court will discuss contributory copyright and trademark infringement first and then turns to vicarious copyright and trademark infringement.

"A party is liable for contributory [copyright] infringement when it, with knowledge of the infringing activity, induces, causes, or materially contributes to infringing conduct of another." *Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772, 790 (5th Cir. 1999). Defendants argue that they are entitled to summary judgment because Epic Tech has no evidence of their knowledge of the infringing conduct. But "cases which turn on state of mind are often inappropriate for resolution at the summary judgment stage." *Krim v. BancTexas Grp., Inc.*, 989 F.2d 1435, 1448 (5th Cir. 1993). The nonmovant must only create a "reasonable inference that the moving party acted with a contrary intent or state of mind." *Id.* at 1449 (citation omitted).

Here, Epic Tech argues that comments made by Texas Wiz managing director—and Defendant—Alexander Gregory in his deposition support such an inference. At his deposition, Gregory admitted he had seen Epic Tech's "Lucky Duck" game before this lawsuit was commenced. (Doc. 220-1 at 121–22.) Although Defendants correctly point out that this testimony does not establish Gregory's knowledge of Epic Tech's copyrights, Epic Tech is also correct that it allows for the reasonable inference that Gregory knew of Epic Tech's copyrights. Gregory's testimony is the only evidence regarding Defendants' mental state as to contributory liability, and it cuts in Epic Tech's favor. Therefore, summary judgment on contributory copyright infringement is inappropriate.

The analysis is identical for contributory trademark infringement. As with contributory copyright infringement, contributory trademark infringement requires proof that a defendant intentionally induced another to infringe a trademark or continued to supply a product to one whom it has reason to know is engaged in trademark infringement. *Inwood Lab'ys, Inc. v. Ives Lab'ys, Inc.*, 456 U.S. 844, 854 (1982). Defendants again argue that there is no evidence of their intent or knowledge of Epic Tech's trademarks. Epic Tech again points to Gregory's deposition testimony.

And again, although this evidence of mental state is not robust, it is enough to create a reasonable inference of knowledge sufficient to defeat summary judgment.

Turning to vicarious liability, a party is liable for vicarious copyright infringement where they "profit[] from direct infringement while declining to exercise a right to stop or limit it." *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005). Defendants do not dispute that they profited from infringement. Instead, they contend that they "did not monitor or control the use of software by any third parties." (Doc. 181 at 12.) This contention is directly contravened by the deposition testimony of Monir Kutob, a Texas Wiz customer. Kutob testified that Texas Wiz directly controlled access to the 8fuse software, including providing an initial key via email to access the software and shutting down access when there was a dispute with the customer. (Doc. 220-3 at 58–59.) Kutob specifically testified that Texas Wiz "could remotely shut down . . . 8fuse." (Doc. 220-3 at 59.) This testimony, if credited, would prove that Texas Wiz declined to exercise a right to stop Kutob's infringing behavior. Therefore, summary judgment on this issue is inappropriate.

Lastly, vicarious trademark infringement, unlike vicarious copyright infringement, is "difficult" to prove and "requires a finding that the defendant and the infringer have an apparent or actual partnership, have authority to bind one another in transactions with third parties or exercise joint ownership or control over the infringing product." *Phoenix Ent. Partners LLC v. Boyte*, 247 F. Supp. 3d 791, 797 (S.D. Tex. 2017) (internal quotation marks and citation omitted). This test is "strictly applied." *Id.* Epic Tech's only purported evidence of an apparent or actual partnership again comes from Kutob's deposition. Kutob testified that he eventually formed an agreement with Texas Wiz to distribute the 8fuse software on Texas Wiz's behalf for a share of the profits. (Doc. 220-3 at 116.) But this testimony cannot reasonably be read to establish that

Kutob and Texas Wiz had authority to bind one another in transactions with third parties or to exercise joint ownership or control over the 8fuse software. Therefore, the Court grants summary judgment to Defendants on the issue of vicarious trademark infringement liability.

### E. Lanham Act Damages

Defendants move for summary judgment on the issue of whether Epic Tech can obtain damages for its Lanham Act claim. (Doc. 188.) As the parties agree, this issue turns on the question of whether Epic Tech can establish counterfeiting. See 15 U.S.C. § 1117(c).

Counterfeiting is "'hard core' or 'first degree' trademark infringement." *Springboards To Ed., Inc. v. Houston Ind. Sch. Dist.*, 912 F.3d 805, 818 (5th Cir. 2019) (quoting 4 McCarthy on Trademarks and Unfair Competition § 25.10). To establish counterfeiting, a plaintiff must show that the defendant used a mark "that is identical with, or substantially indistinguishable from" "a mark that is registered . . . for such goods or services sold." 15 U.S.C. §§ 1116(d)(1)(B)(i), 1127.

Defendants contend that Epic Tech can establish neither that the allegedly counterfeit marks are "substantially indistinguishable" from the registered marks nor that they were used "for such goods or services sold." The Court disagrees. On the "substantially indistinguishable" point, the evidence at least creates a material dispute of fact that must be resolved by a jury. Epic Tech has included side-by-side comparisons between its marks and Defendants' allegedly infringing marks in its briefing. (See Doc. 183 at 14, 24–26; Doc. 216 at 7–9.) Particularly incriminating is the "Bustin' Vegas" mark:

Epic Tech's mark                          Defendants' alleged mark

 

Based on this visual comparison alone, the Court finds the question of whether the marks are substantially indistinguishable to be inappropriate for summary judgment.

Defendants' argument that the marks were not used for "such goods or services sold" is even less tenable. Defendants note that Epic Tech's marks are registered for use in association with "[g]aming equipment, namely, gaming machines," whereas Defendants allegedly used Epic Tech's marks in sweepstakes games, which Defendants contend are distinct from "gaming equipment" or "gaming machines." Thus, Defendants contend, their use of the marks was not "for such goods or services sold" as the services for which the marks were registered. But the category of "gaming equipment" and "gaming machines" intuitively embraces sweepstakes games, so this argument is meritless. Defendants also argue for the first time in their reply brief that Epic Tech has no evidence of counterfeiting, but this argument is waived and anyway incorrect given the substantial number of photographs of the parties' respective marks in the record. (*See* Docs. 183-6, 187-11, 187-12, and 187-13.) Therefore, Epic Tech has sufficiently stated a counterfeiting claim such that summary judgment on the issue of Lanham Act damages is inappropriate.

### F. Trade Secrets

Finally, as the Court noted at the motion hearing, an open issue remains in this case as to whether Epic Tech's voluntary dismissal of its own trade secrets claim should be with or without prejudice. (*See* Minute Entry of October 29, 2020.) The Court now resolves this issue with the assistance of the parties' helpful supplemental briefing. (*See* Docs. 146, 147.)

District courts may place conditions on a party's voluntary dismissal where the "party proposes to dismiss the case at a late stage of pretrial proceedings, or seeks to avoid an imminent adverse ruling, or may on refiling deprive the defendant of a limitations defense." *In re FEMA Trailer Formaldahyde Prods. Liab. Litig.*, 628 F.3d 157, 162 (5th Cir. 2010). Here, only the first

scenario is arguably at issue—Epic Tech moved to dismiss its trade secrets claim near the close of discovery, and nearly two years into the case. That said, Defendants do not offer a legitimate reason that a dismissal without prejudice would prejudice them. Defendants argue only that they engaged in discovery efforts related to the trade secrets claim. But all of the discovery efforts they point to—e.g., deposing Epic Tech's corporate representative, requesting relevant documents, and serving interrogatories—were broadly relevant to Epic Tech's other claims. (*See* Doc. 147 at 3.) Meanwhile, Epic Tech correctly argues that its prosecution of its trade secrets claim was stymied by its inability to access the source code used in the 8fuse games. (Doc. 146 at 2.) Defendants accuse Epic Tech of being solely responsible for this inaccessibility, but the Court's experience in refereeing the discovery disputes suggests that the responsibility is shared. For those reasons, the Court finds that no injustice would befall Defendants if the trade secrets claim were relitigated in the future, and therefore determines that the dismissal be without prejudice.

### III. CONCLUSION

In sum, the Court rules as follows:

- Epic Tech's Motion for Partial Summary Judgment on Copyright and Trademark Infringement (Doc. 183) is **GRANTED** as to copyright infringement and trademark infringement on all marks other than "Go Bananas" and "Four Leaf Cash";

- Defendants' Motion for Partial Summary Judgment on Trademark and Trade Dress Infringement (Doc. 180) is **DENIED IN PART** as to trademark infringement, except as to the "Go Bananas" and "Four Leaf Cash" marks, and **GRANTED IN PART** as to trademark infringement on the two aforementioned marks and as to trade dress infringement;

- Defendants' Motion for Partial Summary Judgment on Vicarious and Contributory

Liability (Doc. 181) is **DENIED IN PART** as to contributory copyright and trademark infringement and vicarious copyright infringement and **GRANTED IN PART** as to vicarious trademark infringement;

- Defendants' Motion for Partial Summary Judgment on Lanham Act Damages (Doc. 188) is **DENIED**;

- Epic Tech's trade secrets claim (*see* Doc. 147) is **DISMISSED WITHOUT PREJUDICE**;

- Defendants' unopposed Motion for Partial Summary Judgment on Conversion (Doc. 188) remains under advisement, pending what the Court hopes will be amicable resolution of the issue raised therein.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas, on this the 23rd day of April, 2021.

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE