UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| EPIC TECH, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:19-CV-2400 |
| | § | |
| FUSION SKILL, INC., *et al*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER**

Before the Court are Plaintiff Epic Tech, LLC's two Motions for Reconsideration (Docs. 245, 249).

I. **BACKGROUND**

The Court has previously detailed the facts of this case. (*See* Docs. 241, 244.) Epic Tech alleges that Defendants—Fusion Skill, Inc.; Texas Wiz, LLC; Jhonny Donnelly; and Alexander Gregory—distributed sweepstakes games, a genre of game similar to slot machines, that violated their patents and trademarks.

The parties filed a combined total of seven motions for summary judgment. The Court disposed of those motions in two written orders. (Docs. 241, 244.) Epic Tech now seeks reconsideration of three holdings across those two orders. For background, the Court recites those holdings here.

First, the Court granted summary judgment to Defendants on Epic Tech's trademark-infringement claims for its "Go Bananas" and "Four Leaf Cash" marks. The Court held that Epic Tech had not introduced evidence to establish that those marks—unlike Epic Tech's other asserted marks, on which the Court granted summary judgment of infringement to Epic Tech—had been

1

used by Defendants. The Court noted that "Defendants clearly raised this issue in their briefing, complete with a separate subheading, and Epic Tech simply ignored it in both its own motion for summary judgment on this issue and its response to Defendants' motion." (Doc. 244 at 5.)

Second, the Court granted summary judgment to Defendants on Epic Tech's claim for trade-dress infringement. The Court held that Epic Tech "point[ed] to no competent evidence to establish non-functionality," an essential element of a trade-dress-infringement claim. (Doc. 244 at 9.)

Third, the Court granted summary judgment to Defendants on the validity of Epic Tech's two asserted patents. The Court held that both patents were invalid as directed to abstract ideas. Applying *Electric Power Group, LLC v. Alstom S.A.*, 830 F.3d 1350 (Fed Cir. 2016), the Court held that Epic Tech's '423 patent "does nothing new other than change the order in which various known steps are performed" and that its '315 patent "describes a set of steps that could be performed by any computer . . . without adding any novel or inventive step." (Doc. 241 at 5, 7.)

Epic Tech seeks reconsideration of all three of these holdings.

## II.  STANDARD OF REVIEW

"Reconsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly." *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004). "[S]uch a motion is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment," but rather "serves the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence." *Id.* (citation and alteration omitted).

## III.  DISCUSSION

Epic Tech challenges three of the Court's holdings, which are discussed in turn below.

2

### A. "Go Bananas" and "Four Leaf Cash" Marks

Epic Tech's trademark-infringement arguments are its strongest. As noted, the Court held that Epic Tech neglected to adduce evidence of infringement of the "Go Bananas" and "Four Leaf Cash" marks. But Epic Tech contends that it did marshal such evidence: Its investigator, Brendan Mullins, swore in an affidavit that the two marks were at one point displayed on the 8fuse website. (Doc. 79-1 at 11, 13.)

The Court agrees that summary judgment was inappropriate in light of this evidence. But the Court first notes two serious flaws in Epic Tech's case.

First, Epic Tech did not properly brief this issue. The Court was inundated with filings in this case, and Epic Tech's Response Brief (Doc. 219) entirely ignored Defendants' discrete argument that Epic Tech failed to offer proof of infringement of these two marks. True, Epic Tech cited to the Mullins affidavit both in its own cross-motion on trademark infringement and in the Response Brief, but in neither brief were the citations offered to rebut Defendants' failure-of-proof argument or otherwise alert the Court to their significance. Still, while the Court strongly encourages the parties in this case to treat each of the many issues distinctly going forward, the Court will not refuse reconsideration to Epic Tech merely because its otherwise-competent evidence was cited in the wrong part of its briefing.

The second flaw is the point harped on by Defendants: Epic Tech has not definitively proven that the 8fuse website accurately reflected the products that Defendants offered for sale. The Court agrees with this characterization of the record but disagrees that this factual uncertainty cuts in Defendants' favor at this stage. On a summary-judgment posture, the Court's mandate is to draw all reasonable inferences in the non-movant's favor, and here the Court can reasonably infer that the products displayed on the 8fuse website were coextensive with those offered for sale by

3

Defendants. After all, the Court has already found that "Defendants distribute 8fuse products to their customers," (Doc. 245 at 5), and Defendants' former customer Monir Kutob has sworn that Defendant Texas Wiz directly controlled access to the 8fuse software, (Doc. 220-3 at 59).

To be clear, the Court does not hold—and Epic Tech does not argue—that Epic Tech is entitled to summary judgment on its infringement claims for these two marks, because the evidence of their infringement is much thinner than the direct photographic evidence of infringement of the other asserted marks. Rather, the Court merely concludes that it inappropriately overlooked Epic Tech's bare but sufficient showing as to the two marks at issue here.

Thus, the Court agrees with Epic Tech: Its holding that the Epic Tech failed to introduce evidence of infringement of the "Go Bananas" and "Four Leaf Cash" marks evinced a "manifest error[] of fact." 367 F.3d at 479. The Court amends its judgment on trademark infringement of the "Go Bananas" and "Four Leaf Cash" marks to deny summary judgment to all parties.

**B. Trade Dress Infringement**

Epic Tech next challenges the Court's grant of summary judgment to Defendants on Epic Tech's trade-dress-infringement claim. The Court reluctantly agrees that reconsideration is warranted.

The Court rejected the trade-dress claim because Epic Tech had "point[ed] to no competent evidence to establish non-functionality." (Doc. 245 at 9.) Attacking this holding, Epic Tech urges that "the purely aesthetic nature of its graphics [is] readily apparent from its explanation of the overall look and feel of the trade dress." (Doc. 244 at 8.) But frustratingly, and dispositively in the Court's original review, Epic Tech offered no "explanation of the overall look and feel of the trade dress" at all. The entire substance of the allegations on trade dress in Epic Tech's First Amended Complaint is: "The Epic Tech Trade Dress is a combination of non-functional distinctive

components that contribute to the overall look of Epic Tech's sweepstakes systems, including the color and orientation of the icons and graphics." (Doc. 79 at 11.) And on summary judgment, Epic Tech merely added, without citation to the record, that "there is no question that the non-functional 'look and feel' of the Epic Tech Trade Dress including, for example, the themes of Epic Tech's 'Lucky Duck' and 'Hotter Than' games, have been copied and distributed by Defendants." (Doc. 219 at 14.)

That presentation failed to describe for the Court with any specificity what Epic Tech's trade dress even is, much less which aspects of it were functional or non-functional. Compare Epic Tech's presentation to that in a case upon which Epic Tech now relies, *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252 (9th Cir. 2001), in which the plaintiff detailed 36 discrete aspects of its trade dress and "conducted extensive discovery" to supplement the record. *Id.* at 1258. Or consider *Tetris Holding, LLC v. Xio Interactive, Inc.*, 863 F. Supp. 2d 395 (D.N.J. 2012), another case heavily cited by Epic Tech, in which the plaintiff offered a highly specific description of its trade dress. *Id.* at 415 ("Tetris Holding claims its trade dress is comprised of the following: 'the brightly-colored Tetriminos, which are formed by four equally-sized delineated blocks, and the long vertical rectangle playfield, which is higher than wide.'"). Epic Tech, by contrast, essentially submitted two photographs to the Court and said, "See?"

All that said, the Court has re-reviewed the limited evidence on this issue—which consists solely of images of the parties' respective gameplay screens—and determined that the trade-dress-infringement claim should have been allowed to proceed in two limited respects. To the Court, it is self-evident that the background screen of the "Lucky Duck" game, which depicts bubbles and rubber ducks, is non-functional, because the game's background is inherently not a part of its gameplay. Yet that background is nearly identical to the one used in Defendants' alleged

reproduction of the "Lucky Duck" game. It is also self-evident that the gameplay icons—e.g., the "A," "K," "Q," "J," and "10" icons—in the "Hotter Than" game are non-functional, because any font for those icons could have been used. Yet Epic Tech's "Hotter Than" icons appear identical to those used in Defendants' alleged reproduction of the "Hotter Than" game.

Therefore, the Court reconsiders its trade-dress-infringement ruling and denies summary judgment to both parties on that issue. Epic Tech may proceed on its trade-dress-infringement claims as to the gameplay screens of the "Lucky Duck" and "Hotter Than" games alone. The Court expects that, if the claims are tried, Epic Tech will have suitably defined its trade dress beyond vague allegations of "look and feel" and will have prepared competent evidence as to the non-functionality of the elements it identifies as part of its trade dress.

### C. Patent Validity

Epic Tech also argues that the Court's holdings on patent validity were erroneous. Counsel on both sides offered lively argument on the merits of this issue. But such argument effectively retraced the ground already covered in the parties' original briefing and in the Court's order granting summary judgment to Defendants on patent validity. The Court has been capably apprised of the relevant law by both parties and is well aware that—as Epic Tech points out—the Federal Circuit has an effective intra-circuit split regarding the scope of section 101. *Am Axle & Mfg., Inc. v. Neapco Holdings LLC*, 977 F.3d 1379, 1382 (Fed. Cir. 2020) (Moore, J., concurring) ("[W]e have struggled to consistently apply the judicially created exceptions to [section 101], slowly creating a panel-dependent body of law . . . ."). The Court acknowledges that Epic Tech's reading of this divided caselaw is colorable. The Court has not, however, been persuaded that its prior holding rejecting Epic Tech's reading of the caselaw effected any "manifest error[] . . . of law." 367 F.3d at 479. Rather, the Court finds that it properly applied binding precedent with which Epic

6

Tech disagrees. (*See* Doc. 245 at 3 ("Amidst this circuit split, the Court has elected to apply the wrong standard to Epic Tech's patents . . . as presented in *Electric Power Grp.*"). Epic Tech's arguments would be more appropriately raised before the Federal Circuit. Therefore, the Court denies reconsideration of its patent-validity holdings.

IV. **CONCLUSION**

For the reasons given above, Defendants' first Motion for Reconsideration (Doc. 245) is **DENIED**, and Defendants' second Motion for Reconsideration (Doc. 249) is **GRANTED**. Summary judgment is now denied as to infringement of the "Go Bananas" and "Four Leaf Cash" trademarks and as to trade-dress infringement.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas, on this the 24th day of June, 2021.

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE