Case 4:19-cv-02400   Document 322   Filed on 02/15/22 in TXSD   Page 1 of 8

United States District Court
Southern District of Texas
**ENTERED**
February 15, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| EPIC TECH, LLC, § § Plaintiff, § § VS. § FUSION SKILL, INC., *et al.*, § § Defendants. § § § § § | CIVIL ACTION NO. 4:19-CV-02400 |

## **MEMORANDUM & ORDER**

Pending before the Court is Defendants' Motion for Leave to File Defendants' Motion for Partial Summary Judgment. (Doc. 310). On February 8, 2022, the Court held a hearing on the Motion and took it under advisement. For the reasons set forth below, the Court now **GRANTS** the Motion for Leave.

**I.     BACKGROUND**

The parties are well-familiar with the history of this case. Nevertheless, the Court takes this opportunity to highlight a few facts that are particularly relevant here. In the fall of 2019, Defendants served requests for production seeking all licenses related to Epic Tech's intellectual property. (Doc. 310-1 at ¶ 10.) Epic Tech objected. (*Id.*) Defendants then served additional requests to identify license agreements. (*Id.* at ¶ 11.) Again, Epic Tech objected. (*Id.* at ¶ 12.) In its objections, however, Epic Tech did not note that it was withholding documents. (*Id.*) Later in discovery, Epic Tech produced a selection of licensing agreements on its asserted trademarks and trade dress. (*Id.* at ¶ 13.) But Epic Tech never produced—or even suggested that it had entered into—a licensing agreement with Super Happy Fun Fun ("SHFF") (the "ET/SHFF Agreement").

Around this same time, Epic Tech designated Jason Queen as its corporate representative for a Rule 30(b)(6) deposition concerning, among other topics, licensees of Epic Tech's intellectual property. (*Id.* at ¶ 14.) During Queen's deposition, Epic Tech clarified that it was not offering Queen to testify about every customer relationship, but only to generally describe how Epic Tech licenses its software. (Doc. 310-12 at pp. 61.) While Queen was testifying, Defendants showed him a picture of a game offered by vegasslotsonline.com. Queen said that the game: "looks to mimic the Lucky Duck Slots game . . . the symbols are the same as our Lucky Duck. Coincidentally, we did commission and authorize a Lucky Duck Slots game, and this is what it looks like." (*Id.* at pp. 82–83.) Queen said that Epic Tech commissioned the game to SHFF, but that "[i]t doesn't work now . . . [b]ecause . . . it's in transition . . . I don't think it does." (*Id.* at 83.) Defendants did not follow up on this information with Queen or with Epic Tech at the time.

The discovery deadline passed on January 15, 2021. The dispositive motions deadline passed on January 28, 2021. Both parties filed Motions for Summary Judgment on trademark and trade dress infringement. In their Response to Epic Tech's Motion for Summary Judgment, Defendants stated: "given the lack of admissible evidence of trademark infringement, Defendants decided not to pursue its affirmative trademark defenses, which Epic Tech would have known if they had only inquired." (Doc. 218 at 29.)

On April 23, 2021, the Court granted summary judgment to Epic Tech on the issue of trademark infringement for the "Fishing Mob," "Lucky Duck," "Bustin' Vegas," and "Hotter Than" marks; granted summary judgment to Defendants on the issue of trademark infringement for the "Go Bananas" and "Four Leaf Cash" marks; and granted summary judgment to Defendants on Epic Tech's trade dress infringement claims. (Doc. 244.)

On June 24, 2021, the Court partially granted Epic Tech's motions for reconsideration.

Specifically, the Court reconsidered its holding on the issue of trademark infringement of the "Go Bananas" and "Four Leaf Cash" marks and denied summary judgment to all parties. (Doc. 260.) The Court also reconsidered its holding on the issue of trade dress infringement and denied summary judgment to all parties. (*Id.*) Defendants then moved for reconsideration, which the Court denied. (Minute Entry, 07/30/2021.)

While preparing for trial in July or August of 2021, Defendants were apparently "reminded" of the game from vegasslotsonline.com, which they believed to be an unauthorized third-party use. (Doc. 310-1 at ¶ 3.) Defendants then conducted a Google search for "Lucky Duck Slots," which returned a listing for a mobile game application. (*Id.* at ¶ 5.) "Lucky Duck Slots" appeared to contain several of the trademarks at issue in this litigation. (*Id.* at ¶ 7.) The developer of the application was listed as "Big Frog Games, LLC." (*Id.* at ¶ 6.) Big Frog Games, LLC shared the same address as Epic Tech, so Defendants surmised that the two entities were related and that "Lucky Duck Slots" was not evidence of third-party use. (*Id.* at ¶ 8.) Defendants stopped investigating the application when trial was postponed. (*Id.* at ¶ 16.)

In late September 2021, Defendants resumed trial preparation and noticed that SHFF was listed as the copyright owner for "Lucky Duck Slots" on the Apple "App Store." (*Id.*) Defendants conducted an Internet search and found SHFF's website and a Facebook page for "Lucky Duck Slots." (*Id.* at ¶ 17.) The website and Facebook page appeared to include all of Epic Tech's asserted trademarks, but did not seem to mention Big Frog Games or Epic Tech. (*Id.* at ¶ 19.) Consequently, Defendants reached out to the CEO of SHFF via LinkedIn to ask him about SHFF's relationship with Epic Tech. (*Id.* at ¶ 21.) Defendants also e-mailed Epic Tech regarding the Lucky Duck Slots app, Big Frog Games, and SHFF. (*Id.* at ¶ 22.)

On November 3, 2021, the parties met and conferred. (*Id.* at ¶ 24.) Epic Tech represented

that SHFF was a third-party licensee of Epic Tech's intellectual property, but that the ET/SHFF Agreement was terminated when SHFF filed for bankruptcy. (*Id.* at ¶ 25.) Epic Tech refused to provide any supporting documents on the issue. (*Id.* at ¶ 26.) Two days later, Epic Tech provided Defendants with four documents: two corporate filings for Big Frog Games, LLC; the personal bankruptcy petition for the CEO of SHFF and his wife; and the ET/SHFF Agreement. (*Id.* at ¶ 27.) Over the course of the next few weeks, Defendants continued to request additional information about the ET/SHFF relationship, but Epic Tech refused to provide anything. (*Id.* at ¶ 29.) Defendants filed their Motion for Leave to File a Motion for Partial Summary Judgment on January 14, 2022. (Doc. 310.) This case is set for a jury trial on June 20, 2022.

## II.    ANALYSIS

Federal Rule of Civil Procedure 16(b)(4) provides that "a schedule may be modified only for good cause and with the judge's consent." FED. R. CIV. P. 16(b)(4). The dispositive motions deadline expired over a year ago on January 28, 2021. As a result, both sides agree that the Court must modify its scheduling order to hear Defendants' underlying Motion for Partial Summary Judgment.[1] "In determining whether a movant has established 'good cause' to allow it to file an untimely dispositive motion, courts evaluate four factors: '(1) the explanation for the failure to [timely file the motion]; (2) the importance of the [motion]; (3) potential prejudice in allowing the

---

[1] The Court thanks the parties for helpful supplemental briefing on the proper procedural vehicle for Defendants' request. After reviewing the briefing, the Court agrees with the parties that Defendants' request is properly positioned as a Motion for Leave under Rule 16(b)(4), rather than a Motion for Reconsideration under Rule 54(b). *See Strickrath v. Globalstar, Inc.*, 2008 U.S. Dist. LEXIS 95127, at * 11 (N.D. Cal. May 13, 2008) ("In patent and trademark infringement cases, for example, a court may find a defendant has no liability for infringement 'without adjudicating the validity of the underlying intellectual property.' "); *see also Perry v. H.J. Heinz Co. Brands, LLC*, 2019 U.S. Dist. LEXIS 97251, at * 9 (E.D. La. June 10, 2019) (citing to *Cardinal Chemical* in a trademark infringement case for the position that an argument for invalidity presents a claim independent of infringement).

[motion]; and (4) the availability of a continuance to cure such prejudice.' " *LFE Distribution, Inc. v. State Farm Lloyds*, 2018 WL 4103236, at *2 (S.D. Tex. May 30, 2018) (quoting *S&W Enters., L.L.C. v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 536 (5th Cir. 2003)). Courts "assess the factors 'holistically,' " but typically "focus[] on the diligence of the party seeking to modify the scheduling order." *Id.* (citing *E.E.O.C. v. Serv. Temps, Inc.*, 2009 WL 3294863, at *3 (N.D. Tex. Oct. 13, 2009), *aff'd*, 679 F.3d 323 (5th Cir. 2012)).

### A. The First Factor: Diligence

The Court finds that the first factor favors Defendants. In a world of perfect lawyering, Defendants might have followed up on the ET/SHFF relationship sooner by asking follow-up questions in depositions and investigating the issue when first "reminded" of the "Lucky Duck Slots" application. But diligence does not demand perfection. And Defendants turned over enough rocks to unearth the ET/SHFF Agreement. Specifically, Defendants propounded discovery requests that should have led Epic Tech produce the ET/SHFF Agreement or admit that it was being withheld. Indeed, Defendants' discovery requests did lead to the production of other licensing agreements. Yet Epic Tech's production only muddied the waters still further, since there was no indication that another agreement remained outstanding. The Court therefore agrees with Defendants that despite Queen's reference to SHFF, "[n]othing produced or disclosed by Epic Tech prior to November 2021 would have directed [them] to understand that SHFF was a licensee of Epic Tech, let alone a licensee to each and every trademark/trade dress (and copyright) asserted in this litigation." (Doc. 310 at 22.) Queen's testimony indicated that Epic Tech "approved and authorized a Lucky Duck Slots game," but he "failed to mention the game was subject to any license[.]" (*Id.*) Indeed, Epic Tech's own counsel apparently "learned about SHFF from their client *after Defendants' October 29, 2021 e-mail*," which indicates that none of the lawyers in the case

5/8

realized that Epic Tech had a licensing agreement with SHFF. (Doc. 313 at 1 (emphasis in original).) The Court also sees no reason to doubt Defendants' contention that they would have filed the underlying motion in a timely fashion had the ET/SHFF Agreement been exposed in the regular course of discovery. The Court therefore finds that Defendants were sufficiently diligent in pursuing the ET/SHFF Agreement: the first factor favors Defendants.

B. *The Second Factor: Importance*

The second factor is difficult to evaluate at this juncture. Defendants proclaim that the underlying motion is important because it presents a slam-dunk affirmative defense of abandonment. Epic Tech responds that the underlying motion is unimportant because it is meritless. Proving abandonment is a heavy burden, and Epic Tech argues that the ET/SHFF Agreement and the limited additional evidence in Defendants' underlying motion is insufficient. But the Court can hardly pass judgment on the merits of the underlying motion without complete briefing. *See Rosario-Diaz v. Gonzalez,* 140 F.3d 312, 316 (1st Cir. 1998) ("So long as the district court properly refused to entertain the motions, it had no need to consider the underlying merits."). Thus, it is difficult to resolve the question regarding the importance of the underlying motion at this point. The Court therefore finds this factor to be neutral.

C. *The Third Factor: Prejudice*

The third factor is a mixed bag. Epic Tech argues that granting leave would result in serious prejudice because "Epic Tech did not obtain fact testimony or expert testimony on those issues, and it has not focused on those issues during its trial preparation . . . due to Defendants' decision not to submit expert reports or summary judgment motions on invalidity or abandonment . . . and Defendants' statement that [they] abandoned all affirmative defenses[.]" (Doc. 312 at 12.) But this

is an overstatement. Defendants were under no obligation to submit expert reports on abandonment. What's more, the discovery deadline occurred two weeks before the deadline for motions for summary judgment; Defendants' failure to submit a summary judgment motion on the issue—and Defendants' statement in response to Epic Tech's motion for summary judgment—could not have had any bearing on Epic Tech's conduct during discovery.

Nevertheless, Epic Tech argues that Defendants' motion will result in prejudice because Epic Tech will have to spend time and energy generating additional fact discovery and expert witnesses. Defendants, meanwhile, contend that Epic Tech will suffer no such prejudice because it is foreclosed from relying on any new discovery in responding to the underlying motion. If a party does not make timely disclosures under Rule 26(a) or (e), "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1); *see also Edmonds v. Beneficial Miss., Inc.*, 212 Fed. App'x. 334, 338 (5th Cir. 2007) ("[Rule] 37(c)(1) provides that a court can preclude the use of evidence that a party fails to disclose under Rule 26(e) without 'substantial justification.' "). At this point, the Court reserves judgment as to the application of Rule 37(c)(1). But there seems to be a real possibility that Rule 37(c)(1) will bar Epic Tech from relying on any new evidence. If that ends up being the case, any prejudice to Epic Tech would be limited to the need to write a responsive brief. At this stage, then, the Court finds that this factor slightly favors Defendants.

### D. The Fourth Factor: Availability of a Continuance

Neither side requests a continuance if Defendants' Motion for Leave is granted. Defendants argue that a continuance is not necessary because the Court has ample time to consider the underlying motion before trial. Epic Tech, meanwhile, says that a continuance is not available at

this late stage because it "would undermine the Court's power to manage its docket, upend the expectation that litigants adhere to the Court's policies, and permit a party to unwind at their convenience their own representations and judicial admissions." (Doc. 312 at 18.) The Court agrees with the parties that a continuance would be quite unusual at this point. Trial is scheduled for June 20, 2022. As a result, there is not much time for the Court to continue additional deadlines without affecting the trial date. Contrary to Defendants' position, however, this state of affairs favors Epic Tech. Because a continuance is not an attractive option, the fourth factor militates against the Motion for Leave.

### III. CONCLUSION

Writ large, the Court finds that the first and third factors favor Defendants, the second factor is neutral, and the fourth factor favors Epic Tech. Diligence, however, is typically the most important factor. And here, the Court concludes that Defendants were sufficiently diligent. The Court therefore holds that Defendants have demonstrated the requisite "good cause" under Rule 16(b)(4) to modify the scheduling order and permit the filing of their Motion for Partial Summary Judgment.

As a result, the Court **GRANTS** Defendants' Motion for Leave and **INSTRUCTS** the Clerk to file Defendants' underlying Motion (Doc. 310-33).

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas, on this the 15th day of February, 2022.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE